Appellant by John O'Connor. Good afternoon. May it please the court, counsel. Good afternoon. My name is John O'Connor. I represent the appellant, Group O., Inc. The case at issue is bound together by nothing but lawful policies of Group O. that cannot form the basis for a class certification. The only supported allegations of unpaid wages are scattered individual claims where employees testified that they believed they were not paid for all hours and a few employees that testified that they worked during unpaid meal breaks, not because of a Group O. policy, but in violation of the Group O. policy, as many employees in discovery have acknowledged. The only allegations of unlawful class-wide policies are utterly void of any supporting evidence, as reflected in the plaintiff's own deposition testimony and the time records. Despite this, the circuit court never looked beyond the pleadings to determine whether the evidence could support the elements for class certification and failed to make the necessary threshold determination that Illinois wage law does not require employees to be paid for time punched in before and after the work day. In granting the plaintiff's motion for class certification, the court applied impermissible legal principles and abused its discretion by failing to identify legal and factual issues that are common to the class and predominate over individual issues, such that a finding in favor of the plaintiffs would result in a finding in favor of the 676 class members. Specifically, the court failed to undertake the required rigorous analysis to determine, first, whether Illinois law requires compensation for pre- and post-shift punched-in time when employees are performing no work. It does not. Second, whether there is evidence of any policy or practice applicable to the class that required or permitted pre- or post-shift work absent authorized overtime. There is none. Third, whether there was any policy or practice applicable to the class requiring or permitting employees to work during unpaid meal breaks. There is none. For similar reasons, the court abused its discretion and erred in concluding that a class action is an appropriate method for the fair and efficient adjudication of the case when it would literally require 676 mini-trials and individual proof of all prima facie elements of the claims by each class member on liability, damages, and group O's defenses, with literally no evidence beyond the undisputed lawful group O policies and perhaps the location of the time clocks common to more than a single class member's claim. We have six issues for review in our brief, but during this argument I will focus my attention on the primary arguments that the court erred in failing to conduct a rigorous analysis, erred in finding the commonality and predominance elements, and erred in finding that a class action is an appropriate method for the fair and efficient adjudication. The unique aspect of this case is that the plaintiffs filed a federal collective action under the Fair Labor Standards Act in bringing the same state law claims under the identical facts. That case is named Creel v. Group O, Inc. In January of this year, U.S. District Judge Koukouras granted Group O's motion to decertify the FLSA collective action under legal principles and standards that are substantively no different from the class certification standards here, finding that plaintiffs have failed to provide evidence of any common policy that violates the wage laws. As reflected in the parties' briefs, both the class certification issues and the wage interpretations under Illinois law are largely based on federal rules. Rule 23 class certification standards and FLSA decertification standards on the one hand, and FLSA wage regulations respect with regard to the wage laws. Group O policy provided that employees were required and permitted only to work their schedule and approved overtime. Employees worked 5-8 hour shifts per week, meaning that any time worked outside of these shifts was overtime. Employees punched in at the entrance of the Caterpillar plant and were required to be at their workstation ready to work when their shift started. Employees were free to eat breakfast at the Cat Shack restaurant inside the plant while they're punched in, to go to the smoking area, to read, to talk to colleagues, to drink coffee. Group O paid employees for their scheduled shift time and approved overtime, and as I said, prohibited working outside of these, this time period. Employees who punched in earlier would be paid. There was also a fiscal window period where employees were told not to punch in earlier than 15 minutes before their shift or punch out later than 15 minutes after their shift. For an earlier period of time, it was a 30 minute window. But they were told you can't punch in earlier than this, but you can punch in up until the start of your shift. Employees who did punch in earlier were paid for this time, but they could be subject to discipline. But they were paid when they were at the Cat Shack or the smoking area? They were not paid, if they punched in 10 minutes before their shift started, they could go to the Cat Shack and eat and then get to their workstation. They had to be at their workstation when their shift started, which is when they were paid, unless they were working approved or authorized overtime. So, theoretically, they were not allowed to punch in 20 minutes early, but they had to punch in 15 minutes? Yes, for most of the period of time, as I said earlier, there was a 30 minute window earlier, and then it became 15, and they were instructed, unless you're working authorized overtime, you can punch in, basically, between 15 minutes and the end of your shift. The Cat Shack was 15 minutes. You had to eat fast, Justice. Is the gist of their complaint that you've adjusted the machines to automatically round up or round down? Well, I think the gist of their complaint is essentially that, although they don't come out and say this, that they believe and in fact concede that the law does not provide this, they're asking for the time punched in. It's repeated throughout their brief where they equate punched in time interchangeably with work time. And they say, look, this is the difference between the time clock and the shift, this is what you owe us. But the law does not require that this time be paid. And that is, I think, what the trial court missed here. The trial court did not look at Illinois law and say, am I dealing with a policy that results in unpaid work? And that's what the class action statute requires, a policy applicable to the class that is illegal. Okay. But if they're saying that the machines are set to do some sort of automatic adjustment, are they? There's no dispute that the machine doesn't really do an automatic adjustment. The Kronos machine that they swipe in at the entrance, north or south entrance to the Caterpillar plant, that records their time. They're not paid to that swipe because they may be smoking, drinking coffee, eating during that time. And traveling to their workstation, which is not compensable under the law. So the machine records their actual time. And those records are in the record. But they're paid to the schedule. And when there's overtime authorized, the supervisor changes the schedule to include the overtime period that is authorized or when the employee gets to the workstation to start working the authorized overtime. And in the schedules, you'll see as much as little as five or ten minutes of authorized overtime that's included in that. But they're not allowed to work outside of their schedule unless they have approved overtime in Group O pays to the schedule and approved overtime and paid millions of dollars in overtime, as the plaintiffs agreed. Michelle Creel, in the two and a half years or so she was there, during this class period, she had over 1,100 hours of paid overtime. Okay, I have this kind of simple logistic question. Let's say the person gets there. When you swipe in, that documents the time you're at the plant, the time you arrived at the plant. Yes. Okay. But you're expected to be at your workstation, let's say, 8 o'clock. Okay? Yes. Okay. And so if you're at the workstation, you're only paid from 8 o'clock to whenever your shift ends. That's correct. Okay. Who monitors whether you're at the workstation at 8 o'clock? The supervisors. And the employees are also told in the employee manual, as they all testified, they can't work outside of the shift without approved overtime. Right. And if they need to stay late or to come in early, they need to talk to a supervisor, and the supervisor adjusts the schedule. And it was routinely granted. Unlike many of the cases that the plaintiffs cite, there's no evidence that Group O discouraged overtime, frowned on it at all. Caterpillar paid Group O for the overtime. It was essentially a pass-through with a markup. Okay, let me ask you. Another part of the complaint that I'd like to talk about is they say, well, okay, if you punch in 12 minutes early, you still only get paid from the time your shift starts. Okay, we've talked about that. But then part of the complaint is, but if I punch in one minute late, my time doesn't start until, let's say my shift starts at 8 o'clock. If I punch in at 8.01, I didn't start getting paid until 8.15. Does that sound close? That's not how – Group O did not round a late punch. If your shift is 8 to 4 and you punched in at 8.01, you were paid beginning at 8.01. So that's paid to the exact. Is that part of the complaint? Well, I think the plaintiffs allege – the plaintiffs, to use the analogy used in the prior argument, the plaintiffs are – or two arguments back, the plaintiffs, I think, are comparing apples to oranges. There's two CFR sections that deal with rounding. And one is for rounding of – 29 CFR – I can't find it. It says that 29 CFR 785.48 A and B. Subsection A says, Employees who voluntarily come in before their regular starting time or remain after their closing time do not have to be paid for such periods provided they do not engage in work. Their early or late clock punching may be disregarded. And that's Group O's policy. 785.48 B says, You can round work time, time the employee is actually working, but you've got to do it fairly. So if you're going to have a round that's 15 minutes for working time, if someone's going to punch in and start working immediately and they punch in 10 minutes early and it rounds to the clock, if they come in 10 minutes late, they've got to get paid. It has to be – it has to work out evenly. Well, I just think, I mean, if an employee comes in 10 minutes late, he can be fired, can't he? Certainly. And the wage laws really don't – the wage laws don't – they sort of leave discipline aside in that regard. And in here, if they punched in too early and were sitting at the cat shack on Group O time when it didn't have – when it wasn't within this window that rounded, they would get disciplined, but they'd still get paid. So you're saying that if the – let's say the shift starts at 8, the employee punches in at 8.05, he got paid from 8 or from 8.05? 8.05, but he didn't start working until 8.05. But if that employee punches in at 7.55, he's not allowed to start working until 8.00. And he also – it's impossible for the employee to start working. If you punch in at 7.55, you can't get to your workstation. At the very least, it's a couple of minutes and it's up to 12 minutes. So that period is noncompetitive at work time under the regulations that Illinois law follows, the federal regulations that Illinois law follows. In the Kirby v. Raceway case, it directs us to follow those as well as the administrative code. Okay, so an employee who punches in at 7.55 and whose workstation is 12 minutes, for anybody with Jesse Owens, it's 12 minutes from that clock. He punches in at 7.55, he still gets paid starting and he or she gets paid starting at 8.05. Yes, even though they don't start work until sometime after that. Is there an adjustment by the supervisor? The supervisor generally will not adjust that time. They will pay to a late punch exactly, but they won't – if they say you're not at your workstation until three minutes after your shift started, but you punched in at your shift start, you get paid from the shift start. What does the machine do? The machine records the actual to the minute punch time. So what is the allegation that the machine is programmed to round down to the nearest 15 minute increment? As we stated in our brief, that's a misunderstanding of group policy. Group policy is not programmed to round down or up to anything. It rounds only to schedule, and the supervisors change the schedule to include overtime. It basically is – I'm sorry, Justice. So the machine doesn't do anything except record the actual time when it's swiped? It's a complicated computer with many kind of HR functions, but I think for purposes of this, it doesn't do anything besides record the actual time. What do you mean for purposes of this? For purposes of this case, we have two key time periods. One is the actual punch time, and one is the scheduled time. But your machine is programmed to do something other than just the actual time that the card is swiped. Well, to the extent that it generates payroll, it pays based on the schedule, and it's the same – the schedule is put in on this Kronos computer system. But can you look at the card, and even though that's what it does, and say, okay, the fellow who punches in at 7.50 starts at 8.00, you say, well, that cost the starter's pay at 8.00. But can you look – so some of these subpoenas, I'm sure they have or will, your time card, your computer records, and can they find out exactly what time that employee punched the clock, regardless of the rounding? Yes, and that's – everything's in the record. So the exact time of the punch, as well as the hours that they're paid to. All right. And if there are no further questions, I will conclude. We only have five minutes, but we're going on. Thank you. Mr. Ganiu? Is that close? Yes, that's correct. Okay. Thank you. May it please the Court, my name is Vaughn Ganiu, and I, along with my colleague, Vijay O. Esonwune of Esonwune Associates, represent the name plaintiffs Cassandra Murphy, Felicia Wright, and Michelle Creel individually, as well as on behalf of a class of similarly situated persons against Grubo, Inc. The issue before this Honorable Court today is whether the trial court views that discretion were implied in principle criteria after granting class certification and after finding that the plaintiffs sufficiently presented evidence to meet the prerequisites for a class action set forth under Section 2-801. Pursuant to Section 2-801, a civil action may proceed as a class action after a trial court determines that the class is so numerous that joinder of all members is impractical. Two, are there questions of fact or law common to the class, such as common questions that predominate over any questions affecting individual members. Three, the representative parties will fairly adequately protect the interests of that class. And four, that the class action is an appropriate method for the fair and efficient adjudication of that controversy. For the majority of my argument, I will focus on addressing most of the contested portions, the most contested portions of class certification based on the briefings of both parties and then address the remaining elements. Accordingly, this court should affirm the ruling of the trial court granting class certification for the following four reasons. The trial court did not abuse its discretion or imply in principle legal criteria when it ruled that the named plaintiffs sufficiently established that common questions of fact and law predominate over individual questions affecting individual members. Second, that the trial court did not abuse its discretion or apply principle legal criteria when it found that the named plaintiffs sufficiently satisfied the numerosity requirement. Third, that the trial court did not abuse its discretion or apply principle legal criteria when it found that the representative parties were fairly adequately protecting interests of the class. And finally, that the court should affirm the ruling of the trial court because the class action is an appropriate method of adjudication in this instant matter. What are the common questions? Your Honor, we believe that some of the common questions relate to whether the named plaintiffs and the proposed class members were subjected to the same wage and hour policies and procedures to reduce hours required and paid for, including any hours paid by the employees regarding their overtime rights, as well as the common questions of law regarding whether the proposed failure to pay the named plaintiffs and the proposed class members violated the LMI minimum wage law and the LMI Wage Protection Payment and Collection Act, as well as whether the both fairly adequately calculated number of overtime hours owed to the named plaintiffs and the proposed class members worked during each paid period within violation of Illinois law. And turning to my first point, the trial court did not abuse its discretion or commit legal error when it concluded that common questions such as the ones I just indicated of fact and law did exist in the present case. And importantly, a common question may be shown when claims of individual class members are based on a common application or practice, when those are agreed by the same singular conduct or pattern of conduct. And as Your Justice has pointed out to defense counsel, we believe that the impermissible rounding policies of Group O sufficiently satisfies the commonality requirement because it was a common policy that subjected the plaintiffs, the named plaintiffs, as well as the proposed class members to the same injury, which is that they were not paid for their pre-shift or post-shift work that they were commencing at the Caterpillar plant due to the rounding policies and procedures implemented through the Kronos timekeeping system. Okay. Counsel just said that's perfectly permissible under Illinois Ways and Laws. So what say you? In other words, if they say you can punch in 15 minutes early, but you can't go to work 15 minutes early, and my understanding is you all weren't paid for that time, right? Well, Justice, the testimonies from named plaintiffs as well as other proposed members indicated that even though Group O may have had written policies regarding the punch-in and punch-out times and the allotted overtime times, they indicated that they were regularly requiring bible-sheet providers to work or come into work before their punch-in time, which they did, and work at their workstations before their shift start times or were through their shift end times, and those times were just subsequently rounded down or rounded up to the benefit of Group O, thus affecting their pay, and therefore in plaintiff's contention constitute a violation of the Illinois Ways and Laws. So you're saying it was approved overtime, but they didn't get as much as they should have gotten? In most cases, with respect to the testimony from the named plaintiffs and proposed class members, the overtime hours that they worked and weren't paid for were not approved because they were told by the supervisors or it was known to them that they had to finish their work  So if their shift ended at 8 o'clock and they still had to finish their work, they'd work beyond 8 o'clock and punch-in, let's say, at 8.14, however, criminals would round that time down or that time would be rounded down pursuant to Group O policy, and their shift would end at 8 o'clock even though they'd work continually past 8 o'clock, and that wasn't approved. They'd still do it because it was known to them that they had to complete their work, for example, at that time, whether or not it was authorized by the supervisor or not. They've alleged, if I understand correctly, that there's somebody who's authorized to pick that work up immediately so that if the work isn't finished, the employee is still supposed to leave because there's someone who'll come in and finish it except in the case of one of the named plaintiffs who doesn't have a person who comes in to do that. So it sounds like they're saying that there isn't any justification for most of these employees to have to work overtime or pass their shift. According to the testimony from the named plaintiffs and other proposed class members, while there may be some overlap in the shifts, there were times where they believed that they had to continue to work to finish those, their particular assignments for that day, given the work that they were instructed to perform, that wouldn't be fulfilled by someone else and they had to get that done before they left. Obviously, these employees don't want to look bad in front of the supervisors. They want to perform well, and so they wanted to complete those tasks as much as possible before leaving for the day. And so they would complete those tasks. However, those tasks likely sometimes would go beyond their shift and time periods, but then due to the chronic timekeeping system and the routing policies of Group O, they would not be compensated for that time, either through straight pay or overtime pay, which wasn't necessarily approved or authorized by the supervisor. Well, does it make a difference whether the supervisor ordered them to stay and finish it or whether they stayed and finished it because they wanted to look good for their supervisor? The policy of Group O, as the defendant set forth, indicates that they had to get authorization from their supervisor to perform overtime work. However, commonly the employees would need to perform work past or may have performed work past their shift end times, which should result in either a correction to the overtime by the supervisor so they would get paid for that time, but many times they weren't paid for that, due to the routing procedures at Group O, which the plaintiffs have contested was illegal based on the wage laws of Illinois. Well, what happens if the employee, okay, 4 o'clock comes and the employee just walks away? They're paid to 4 o'clock, aren't they? Once they're punched out, depending on their punch-out time. Well, I mean, okay, so it takes 5 minutes to walk to the door and they punch out at 4.05, because they're not paid for walking time from the workstation out, correct? That is correct. That is not non-compensable. Okay, so what happens if they do that? Why are they staying? Because their supervisor told them to complete the work for their assignment for that given day, and then they do that, and then they punch out, and then they walk out and go to their car and presumably go home. Are these unionized employees? These are non-exempt hourly employees, Your Honor. So what you're saying is that if there's documentation that this is a pattern in practice that the supervisor is saying you can't leave at 4 unless your work is done, then they should get paid overtime from that time until the work is done. Correct, Your Honor. Okay, and you're saying the problem is that if their work is done at 4.11 and they walk to the exit, swipe the card, it rounds back to 4 o'clock and that's all they're paid. Yes, Your Honor, because it rounds back 15 minutes in the break room. Right, right. Okay. In addition, Your Honor, while the supervisors have the authority to grant overtime to the employees at Pickard Growing during this time period, they also were subjected to complaints by employees regarding their pay rates, and there was testimony from some of the proposed class members who determined that there were inconsistencies in their pay stumps regarding their pay aftership, for example, to the supervisors. The supervisors did not respond properly to those complaints according to some of the testimony from the proposed class members. So even if the proposed class members have determined that there was discrepancy in their pay rate when they tried to go to Group O and complain about it, those complaints went unheard or were not dealt with properly. I have another question. I keep asking about the machine because I thought that I understood something about the complaint, but the more I listen to the arguments, I'm not sure that I am. Is it part of your complaint that because the machine does automatic rounding one way or the other, that some people are being treated differently than other people in terms of how they get paid? No, Your Honor, we don't believe that there is a... practice by Group O that affects all non-hourly exempt employees during that time period due to the nature of the recording of the punch-in time or punch-out time. Does that answer your question, Justice? So that if somebody has a shorter walk from their station to the door, from the door to their station, the rounding up is the same for every employee? The way Cronos operates, we believe so, Your Honor. Well, that's the Cronos. Their punch-in and punch-out time applies similarly to all non-hourly exempt employees at Caterpillar. Well, you're not paid for walking to or from your workstation. No, Your Honor. Under the federal regulations, that would not be compensable. Correct. Furthermore, while Group O contends that individualized determinations would overcome any common issues predominating over the individual issues, the trial court quickly concluded that predominance was still met under the rationale of the Curtis v. Unala case from the Second District. And specifically because the common practices and policies of Group O apply to all of the affected class members, similarly, that would be the main legal theories that would be discussed at a subsequent class action trial. And therefore, the individual determinations that Group O alleges would need to be determined would not be the main subject of that trial, at that upcoming trial, but maybe for an issue of damages. I need to ask you another question now, too, because sometimes the more I listen, the confuseder I get. And so I understand what you're seeking. And that is, so if an employee works – well, an employee punches out at 4.15 and his shift ends at 4, it rounds him back to 4 o'clock, right? Correct, Your Honor. And so what you're saying is that maybe that employee – if that employee worked until 4.10 and it only took him five minutes to get to the punch clock, then the company owes him ten minutes of overtime. Am I right? The company would owe him once the shift end time ended based on his punching time to the criminal system if that was within the 15 minutes and he was only paid up to his shift start time and not to the punching time. The plaintiffs have allegedly complained that that would be a violation of Illinois law. So is that a yes? I believe so, yes. Stick with me. The employee works until 4.10, or the employee punches out at 4.10, 4.15. The clock knocks him back to 4 because that's when his shift ended, right? Yes. Are we – okay. And some of these employees say, well, the reason I punched out at 4.15 was that I worked until 4.10. I got to the time clock and I only get paid for those ten minutes. Right or wrong? Is that the position? Yes, Your Honor. At that time, once they discovered that discrepancy that they should have been paid, they would then have reported it to their supervisor indicating that there was a discrepancy in their pay time based on how much time they worked. However, employees have testified during their depositions that their complaints to the supervisors or the management at that particular facility would go unfounded. Okay. All right. Thank you. In addition, Your Honor, the trial court quickly concluded that classification was appropriate in this case because the class was sufficiently numerous that joinder of all parties would be impractical. As defense counsel noted, there were 675 employees potentially within the class, and we have presented evidence at the trial court level indicating that, for example, if during one pay period between 2011, 2012, and 2013, at least 200 employees were potentially not compensated for hours based on their punch-in and punch-out times. And in cases such as Cruz versus Unaloft in the Second District, they determined that within one pay period, if between 80 to 90 employees were not properly compensated, that would satisfy the numerosity requirement. In addition, the trial court quickly concluded that the representative parties, such as the main plaintiffs, would fairly and adequately protect the interests of the class and that plaintiff's counsel would also adequately protect the interests of the class, in this case, due to their legal representation. Are we talking about your evidence at this point? Is there how many employees? You said 80-something in that one classification? In that one classification case, it was 80 to 90 employees determined that were affected, and therefore they determined that the numerosity requirement under section 2-801 was satisfied. And here we have well beyond that number of employees. So really what we're hearing is whether the trial court occurred in certifying you as a class to proceed with an action that may or may not have any merit. Well, the plaintiffs believe that the class action has merit in this case. However, at the trial court level, they didn't abuse the discretion  Well, I know you believe that, otherwise you would be subject to 137 sanctions, okay? But I'm saying at this stage of the litigation, the criteria you believe have been met to say, for our claim, we can have these three people as class representatives and we have a class behind them, similarly situated and affected, right? Yes, Your Honor. Obviously at the trial court level. But at any stage of certifying whether you've met these criteria for class, similarly affected, et cetera, based on your allegation, there's no determination or is there a requirement that there be a determination as to whether this is a frivolous or a serious lawsuit? At the classification stage, regarding section 2-801, we believe that that determination does not have to be met at that time. Okay. And that was clearly stated in the decision in Cruz v. Unalock in the Second District where they indicated that the trial court in that case erred in denying certification because they looked into the merits of the case instead of whether the class certification was applicable at that time. So does it make any sense to you, with all due respect to my colleagues in the second, so if the judge finds that everything they allege here, nothing they allege here is a violation of anything, but you ought to certify them anyway because you can't look at the merits of the case, does that make any sense? Your Honor, you still have to perform a rigorous analysis to determine whether or not the name plaintiff has sufficiently met the requirements under section 2-801, looking at the pleadings as well as the factual basis underpinning their allegation. At the same time, we stand by the ruling in the Cruz v. Unalock case that at the classification stage, the trial court correctly determined based on its analysis of the complaint and the facts supported in our motion towards class certification that they were sufficiently met by the name plaintiffs. Well, that's kind of, I guess, what we're trying to get at. I mean, is it proper to look behind the requirements of certifying for class and the substance of what the allegations of this class are bringing against the defendant? According to the reasoning of the Second Circuit, which we stand by, we don't believe it's a... Second District. Second District, yes. Any further questions, Your Honor? Thank you. Thank you, Mr. Gamble. Mr. O'Connor. May it please the Court. The Illinois Supreme Court says we do have to look beyond the pleadings. ABO did it. Smith v. Illinois Central Railroad did it. It's not just what you say, it's what you can show. Cruz is distinguishable. In Cruz, while there's issues as to how they explained the meal policy and whether there was, in fact, a factual meal policy, in Cruz they found an early end policy. They found an employer's policy that said you have to be in here. You have to be in here 15 minutes before your shift, but we're not going to pay you for it. That's what the plaintiffs tried to allege here in Ms. Murphy's declaration and Ms. Creel's declaration. When they came in for their depositions, Ms. Creel said, no, no, I just have to, if I started at 7, I have to be there ready to work at 7. Ms. Murphy said, well, someone told me, my supervisor told me to come in early, and when she was asked how many times did that happen, she couldn't recall whether it was more than twice during the year that she worked there. Her time records revealed that, in fact, she used to, she would punch in quite often the minute before her shift started. There's clearly no early end policy. Judge Kikoris found it on the record, and it's supported in our record. So we do have to see whether, we have to first look and see whether we're dealing with illegal conduct. The third district's decision in Ramirez did exactly that, which the trial court cited but did not seem to follow. The third district, in Ramirez's case, ruled that summary judgment was not appropriate because a reasonable fact finder could find that the alleged, the uniform billing invoice could be found deceptive. That was a billing invoice that applied to the whole class. If you found that it was deceptive and the third district said, yes, a reasonable fact finder could so find, then you had class-wide liability in one stroke, as we're told by the U.S. Supreme Court and we're told by the Illinois Supreme Court. It's got to be a question, it has to be a common question, is one you can decide in one stroke, not 676 different people, some eating at the cat shack and others alleging to have worked before their shift, in violation of group boss policy. I would also like to note the counsel's statement about working after shift for the 10 minutes and Justice Schmidt's questions regarding that, where you would, your schedule ends at 4 o'clock and you don't punch out until 4.14, it rounds down, but you worked until 4.10. Well, that 10 minutes, you should be paid under the law and group boss policy says so. And you're supposed to let your supervisor know that, in fact, you're working overtime. And if you look at the record, Ms. Creel's schedule at C778, which is a, that shows that she was paid for the time, her schedule was changed from 7 to 4 to 7 to 4.05, to reflect those five extra minutes. Murphy's schedule in the record on C771, Murphy's schedule was changed to work from 8 to 4, to 8 to 4.10, and she was paid for that extra 10 minutes. So that's how the system worked and everybody got paid. And the idea of a pattern in practice, we don't have that here. And while there is certainly case law, which we describe in our briefs, a policy to violate the policy, you can't say we prohibit overtime, or we prohibit working during the meal period, but then you tell, then the general manager tells all the supervisors, you know, we're real busy on Thursdays, so make sure these guys work through lunch. That's a policy to violate the policy. We don't have that here. We have a couple of people, and it's important to look at what's in the record and what's not. We're not talking about many people. In the class briefs, there's two or three people that testify that they believe they weren't paid or that they worked during a meal. This is out of 676 that they're asking for a class. There's no common answer to the question of, was I required to work unpaid? And that is why a class cannot be certified. If there are no further questions, I will conclude here. Thank you very much. We thank both of you for your arguments this afternoon. We'll take the matter under advisement. We'll issue a written decision as quickly as possible. The court will stand in brief recess for a panel change. Please rise. The court stands in recess.